Argued June 9, modified July 6, rehearing denied July 27, 1915.

# McNIEL *v.* HOLMES.*

### (150 Pac. 255.)

**Vendor and Purchaser—Fraud—Evidence.**

1. In an action to set aside real estate transactions between physician and patient, evidence *held* to show that complainant was induced to enter into the transaction by the fraudulent representations of defendant.

**Principal and Agent—Fraud—Physician—Loss to Plaintiff.**

2. Where a physician represents to his patient that he can get some property for her which would be a good investment, and on being made agent of the patient sells his own property to her, the transaction may be rescinded though no loss resulted.

[As to whether a physician's undue influence over a patient is to be presumed, see notes in 33 Am. Rep. 736; 55 Am. Rep. 482.]

**Vendor and Purchaser—Fraud—Change of Position.**

3. Though a patient, buying land of her physician on the fraudulent representation that it is not his land, does not disaffirm with energetic promptness, after discovery of the fraud, she may rescind; the position of the physician not having changed.

**Appeal and Error—Objections to Decree—Cross-appeal.**

4. An appellee, not taking a cross-appeal, is presumably satisfied with the decree as rendered by the trial court.

**Joint Adventures—Action Between Parties—Relief Awarded.**

5. Where a physician represents that he will put in $2,000 for a $4,000 purchase of property, if his patient put in the other $2,000, and the physician buys the property, but mortgages it for his share and takes the title in his name, conveyance of an undivided one-half will be decreed the patient, without prejudice to any rights she may have on account of damage by reason of the mortgage.

[As to carelessness as a bar to relief from fraud, see note in 32 Am. St. Rep. 384.]

**Costs—Appeal—Plaintiff not Appealing.**

6. Where a decree in favor of plaintiff awards to defendant an amount for taxes paid in excess of that due him, and plaintiff does not appeal, the judgment will be modified, but without costs of the appeal to either party.

## From Multnomah: Thomas J. Cleeton, Judge.

*The effect of a misstatement as to title to real property is discussed in notes in 28 L. R. A. (N. S.) 202; 39 L. R. A. (N. S.) 1142.
As to waiver of purchaser's right to rescind for fraud, see note in 30 L. R. A. (N. S.) 872.                                Reporter.

Department 2. Statement by Mr. Justice Harris.

This is a suit by Sarah L. McNiel against Edwin C. Holmes, in which the plaintiff seeks to annul two real estate transactions, and to recover the moneys paid on account of the lands. The properties involved are known as the Seror Park or Rockwood Tract and the Union Avenue lots. The discordant stories of the litigants are told in the pleadings. The complaint alleges that the plaintiff, being threatened with blindness, sought and obtained the professional services of the defendant, who is a practicing physician; that the parties hereto sustained the relation of physician and patient from the spring of 1910 to the spring of 1913; that, while he was acting as her physician, and with the intent to defraud her, the defendant represented to plaintiff "that he knew of a certain parcel of land which could be bought for $3,000 and which was worth that sum, and which would prove a profitable investment for the plaintiff, and advised her to purchase said parcel of land, and as a further inducement, defendant fraudulently informed plaintiff that he would purchase said property himself if he had the means; that said defendant at that time owned this said parcel of land, which fact was fraudulently concealed from plaintiff"; that by reason of the false representations the plaintiff entered into an agreement to purchase certain land in Seror Park. The complaint further shows that under the terms of the written contract the defendant agrees to sell, and the plaintiff promises to pay $3,000 for the land; that the sum of $1,200 was paid on June 15, 1910, the date of the agreement, and that additional payments were made to the defendant as follows: Three hundred dollars and $65 on November 9, 1910; $750 and $65.62 on September

28, 1911, and $600 on September 25, 1912. The second transaction involves property which is referred to as the Union Avenue lots. The complaint avers that while defendant was treating plaintiff's eyes he advised her that she could make a profitable investment by intrusting him with the sum of $2,000 to purchase the Union Avenue property; that it was agreed that plaintiff would contribute $2,000, and that defendant would invest an equal amount in the land, and that defendant would manage the property, collect the rents, sell the land and divide the proceeds; that plaintiff relied upon the false representations made by defendant, and paid him the sum of $2,000; that defendant did not make any payment of his own money, but took title in his own name; that defendant refused to account to plaintiff or make any conveyance to plaintiff, except that he gave to her a writing as follows:

"This is to certify that Miss Sarah McNeil has one-half interest in the sale of property 1270 and 1272 Union Avenue North. Same being held in name of Edwin C. Holmes for convenience. Said Dr. Holmes to look after renting, selling, insurance, taxes; and when in his judgment he deems best to sell same and make a settlement with Miss Sarah McNiel.

"Portland, Oregon, Sept. 28th, 1911.
                    "[Signed]    Edwin C. Holmes."

The complaint concludes with a prayer for the rescission of both real estate transactions and for a judgment for the moneys paid to defendant. By his answer the defendant denies the charge of fraud, and affirmatively avers that plaintiff expressed a desire to purchase real estate as an investment, and requested defendant to assist her in finding such investment; that he told her that he owned the Seror Park Tract, which he would sell to her for $3,000; that plaintiff in-

spected the land, signed the written contract, entered into possession, and made the payments mentioned in the complaint. The answer also contains a narration of the defendant's version of the agreement concerning the Union Avenue lots. He asserts that during the early part of the year 1911 the plaintiff requested him to assist her in securing an investment in Portland, Oregon; that, acting upon her request, and after making inquiries, he ascertained that the Union Avenue lots could be purchased for $4,000; "that plaintiff had for investment at said time the sum of $2,000; that thereupon an agreement was entered into by and between plaintiff and defendant, by the terms of which defendant purchased in his own name, but in trust for plaintiff, as hereinafter set forth, the property described in said second cause of suit, for the sum of $4,000, which sum said property was at that time reasonably worth, for $2,000 cash, and $2,000 to be secured by mortgage thereon; that it was then and there agreed, by and between plaintiff and defendant, that plaintiff should take said property in his own name and give said mortgage in his own name, but that said transaction should be in trust for plaintiff; that defendant should manage and handle said property as the agent for plaintiff, receive whatever rents and profits might result therefrom, and should sell the same whenever in his judgment the same could be sold for a reasonable profit, and, after paying the said mortgage, the original investment of plaintiff therein, and other expenses, and liens which might exist against said property, defendant should retain one half of the net profits thereof as his compensation aforesaid and services therein, all of which plaintiff then and there well knew and agreed to. Defendant

advanced for plaintiff the sum of $2,000, for the reason that plaintiff's money had been loaned and invested, and she was collecting the same from time to time, and plaintiff paid defendant thereon the sum of $2,000 at different times.'' The story of the transactions as told by the defendant was denied by the reply. A trial in the Circuit Court resulted in a decree which cancels the contract, dated June 15, 1910, concerning the Seror Park Tract, awards plaintiff a judgment for $2,978.60, with interest, directs the defendant to satisfy the $2,-000 mortgage on the Union Avenue property, and then to deed to plaintiff an undivided one-half interest in the land, and that plaintiff pay to the defendant $233.37, being one half of the money advanced by the latter for taxes, costs, and charges for the Union Avenue property. The defendant appealed from the decree, but the plaintiff did not appeal from any part of the adjudication. MODIFIED. REHEARING DENIED.

For appellant there was a brief over the names of *Mr. Joel N. Pearcy* and *Messrs. Wintler & Mendenhall,* with an oral argument by *Mr. Pearcy.*

For respondent there was a brief over the names of *Messrs. Sullivan & Mannix* and *Mr. Henry M. Esterly,* with an oral argument by *Mr. Ramond A. Sullivan.*

MR. JUSTICE HARRIS delivered the opinion of the court.

1. The plaintiff was suffering from an impairment of her vision, and had moved to Portland with the hope that a change of residence would improve the condition of her eyes. She had consulted with an occulist at her former place of residence, who gave her no encouragement, and she seemed to be in danger of be-

coming blind. After arriving in Portland she consulted with defendant, and the relation of physician and patient existed from March, 1910, until May, 1913, When the plaintiff first interviewed the defendant she was, in the language of defendant, "a nervous, fretful woman at that time." By the exercise of his professional skill the defendant succeeded in bringing about a decided improvement in plaintiff's condition, and because of the success achieved by the physician the patient quite naturally reposed implicit confidence in the defendant.

The version of plaintiff is at variance with the one narrated by defendant. No good purpose is served by recounting all the evidence, and it will suffice merely to say that a careful reading and analysis of all the evidence leads to the conclusion that the narrative given by the plaintiff relates the history of the transactions. Miss McNiel was without friends or relatives in Portland. She had about $4,500 invested in first mortgages in Bridgeport, Connecticut, and about $1,-500 invested in Pomona, California. The defendant was informed of the financial condition of plaintiff. During a period of 13 years her financial affairs had been managed for her by a Mr. Shaw, who resides in the east. She had no knowledge of the values of property, and did not inspect the Seror Park or Rockwood Tract before signing the contract. She told the defendant that she wanted her eyes to get well as soon as possible, so that she could obtain work and earn back some of the money that she had been obliged to expend, whereupon he represented to her that he had made $50,000 in real estate in Portland in eight years, and "he said a better way to do than to try to get work and earn money was to buy real estate." Miss McNiel testified that she requested the defendant to advise

her when " he had some good buy that he knew was good," and he told her that—

"he knew of a first-class buy he could not possibly take, he had gone over in detail all his business, and he could not possibly arrange to take it, but I could have that buy."

Miss McNiel further testified:

"He told me he had done everything he could, and he could not possibly arrange to take it, and I said I would be glad to take it. I told him when I would have my first payment, which would be about the middle of June, and I asked him how he could hold so valuable a buy as that was until I could get this money. I said, 'Surely as good a buy as that will be taken up, you can't hold it.' I said, 'I shall have no money whatever to put into that until the 1st of June.' He said, 'By the payment of a small sum of money I can hold that lot for you.' I saw him a few days later, and I asked him if he had been able to hold that lot for me, and he said he had, and he spoke about that from time to time, and I went to him and told him when I would have my first money, and I think I showed him letters from my agent; I know I did a little later, because I took them to him, and he read when I would have my first mortgage note. My first mortgage note was to mature the 15th of June, and it came a little sooner than that, and I made my first payment on the Rockwood property the 15th of June, and he gave me the paper you have there."

The defendant represented that he had made a small payment to the owners in order to hold the property. The circumstance of the name of the defendant appearing in the contract as the seller is explained by Miss McNiel, who testified that:

"When he gave me that property it looked as if he owned the property; his name appeared on it, and his wife's name appeared on it; and he said because he

had made the payment to hold it, it looked as though it belonged to him, but the payment he made was just the same as though he owned the property when it was passed on to me. He told me that it was just the same as though he owned it."

2. The relationship existing between the plaintiff and defendant presents a twofold aspect: One party was both a physician and agent, while the other was the patient and principal. The physician pretended to comply with the request and became the agent of the patient. The Seror Park Tract was represented to the plaintiff as the property of a third person, when in fact it was owned by the agent and physician. The defendant could not be both seller and agent, unless acting with full knowledge and consent of the plaintiff. The principal had the right to repudiate the contract upon learning the truth, without regard to whether the transaction resulted in a loss: 31 Cyc. 1433. It makes no difference that the plaintiff was not injured: *Friesenhahn* v. *Bushnell*, 47 Minn. 443; *Mills* v. *Goodsell*, 5 Conn. 475 (13 Am. Dec. 90); 31 Cyc. 1440.

3. The conceded and unquestioned rule is that a defrauded party must not delay in repudiating a contract which has been induced by the fraud of another; and, although the plaintiff did not disaffirm with energetic promptness, nevertheless under all the surroundings of the case she did act with sufficient vigilance to entitle her to a cancellation of the contract for the Seror Park Tract. The defendant was advising her from time to time and his situation was no different at the time of the commencement of this suit than it was at the very moment when plaintiff first learned of facts which would have prompted immediate action by a person more experienced in business affairs. The

contract signed June 15, 1910, should be canceled, and plaintiff is entitled to a judgment for the amounts paid on the contract, with interest at 6 per cent per annum from the date of the several payments, less the sum of $60, received by plaintiff.

4, 5. Having learned that the Union Avenue property could be purchased for $4,000, the plaintiff and defendant each agreed to contribute $2,000 on the price and "own it share and share alike." The plaintiff advanced $2,000 to the defendant, who in turn paid it to the seller; the defendant, without the knowledge of the plaintiff, took the title in his own name and mortgaged the land to secure $2,000, which he borrowed for the purpose of paying the balance of the purchase price. The plaintiff did not appeal from any part of the decree or judgment, and presumably is satisfied with the conclusions reached by the trial court: *McCoy* v. *Crossfield,* 54 Or. 591 (104 Pac. 423) ; *Flinn* v. *Vaughn,* 55 Or. 373 (106 Pac. 642). The defendant ought to do that which he agreed to do, and he will be required to convey to plaintiff an undivided one-half interest in the Union Avenue property by executing a proper conveyance within 10 days after the mandate is filed in the Circuit Court, otherwise the decree shall operate as a sufficient conveyance. The defendant had no right to mortgage the interest of plaintiff in the land, but there is nothing to prevent him from encumbering his own undivided interest. If the plaintiff is damaged or injured by reason of the mortgage given by defendant, she may avail herself of any appropriate remedy, and this decree shall not prejudice such remedy.

6. The trial court directed plaintiff to pay to defendant $233.37, which sum was found to be one half

of the aggregate amount advanced by the defendant for taxes, costs and charges on account of the Union Avenue property. The amount awarded by the decree appealed from is in excess of the sum the defendant is actually entitled to, but the defendant alone appealed and it is necessary to modify the decree appealed from; hence under the circumstances we think it fair that neither party have judgment for costs or disbursements in this court. The plaintiff, however, is not obliged to pay to defendant the sum of $233.37 unless the defendant satisfies the mortgage so far as the encumbrance affects the undivided interest owned by plaintiff; and, if the mortgage is not paid by defendant, the sum of $233.37 shall be credited on any damage or injury suffered by plaintiff. It is ordered that the decree be modified so as to conform with this opinion.        MODIFIED. REHEARING DENIED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE EAKIN and MR. JUSTICE BEAN concur.