### OREGON MORTG. CO., Limited, v. RENNER et ux.

#### No. 1928.

District Court, D. Idaho, S. D.
Jan. 5, 1937.

728

W. G. Bissell, of Gooding, Idaho, for plaintiff.

S. T. Lowe, of Burley, Idaho, for defendants.

CAVANAH, District Judge.

On August 1, 1927, the plaintiff and defendants entered into. a written contract of sale for 180 acres of land with any and all water rights decreed or otherwise appurtenant, to the defendants, for the purchase price of $8,200, to be paid in installments of $800 on the delivery of the contract and the balance in accordance with the terms of certain promissory notes payable $700 on the first of December 1927, and $1,000 on December 1, each year thereafter until December 1, 1933, when $700 is to be paid together with interest at 7 per cent. per annum. Under the contract, defendants entered into the possession of the land and paid the cash payment of $800 and $1,700 on the principal $1,543.92 as interest, and $475.47 as taxes, but failed to pay the subsequent installments and taxes.

The suit is brought to terminate and forfeit the rights of the defendants under the contract and in the land, and to determine the amount due the plaintiff from the defendants, such as the amounts claimed by it to have been paid out in order to protect its security as premiums on the insurance, taxes, and the balance of the principal and interest and in case the defendants fail to make payments of such amounts within a reasonable time, all right, title, and interest of the defendants in the contract and land be terminated, canceled, and foreclosed and title to the land be quieted in plaintiff, and that it be restored to full possession and to retain all sums paid by the defendants as liquidated damages.

The defendants by answer and cross-complaint deny that they have breached the contract or that the plaintiff has elected to or declared it forfeited or that after crediting all payments made by them upon the contract, the amount claimed by the plaintiff is due it. And by affirmative answer and cross-complaint they allege that they were strangers to the land, were not acquainted with it and had no knowledge of the water rights appurtenant thereto from Howell creek and Marsh creek, or the nature and character of the creeks, or the amount of water that flows in Howell creek. That in order to in-

duce them to enter into the contract the plaintiff falsely, fraudulently, knowingly, and intentionally represented to them that the land had a second water right of 35 inches of the water of Howell creek with date of priority of 1876, 50 inches of water with date of priority of 1880, and 130 inches of water of date of priority of 1892, and that the water rights appurtenant to the land were ample and sufficient to properly irrigate it. They further allege that in order to prevent them from making any inquiry of the nature of the water rights appurtenant to the land the plaintiff directed and advised them not to make any inquiry regarding the land or the water rights from the then tenant for the reason that the tenant wanted to purchase it and could not do so, as he had no money, and that if he knew they were purchasing it and going to receive the landlord's share of the crop thereon he would neglect the crops that were then growing. They further allege that the land has a right to the water of Howell creek of 35 inches with date of priority of 1876 but does not have a second water right in the creek, that there is not appurtenant to the land a decreed water right of 50 inches of the water of Howell creek with date of priority of 1880 or any other number of inches in excess of 30 inches, and that the water rights appurtenant to the land are not sufficient or ample to irrigate it or produce profitable agricultural crops. Further, they allege that at the time the contract was entered into the water rights that were appurtenant to the land had been decreed to it and certain other land that was held by Daniel Baird, and that it had not been segregated and it was impossible to determine from an examination of the records of the county, the amount of water that was appurtenant to the land; that the creek is a stream of short duration as its maximum flow is reached from the 1st to the 15th of May and thereafter the water recedes to a small stream not sufficient to furnish water for the land. Then it is alleged that the representations made were false, fraudulent, and material, and known to the plaintiff at the time they were made to be false and made with intent of inducing and persuading them to enter into the contract and that they relied upon them and entered into the contract and paid them the sum of $2,705.39, and on improvements on the land $248.71; that they did not discover the falsity of the representations until May 21, 1934, and after that was done plaintiff agreed that it would make adjustment on the contract and procure for them a water right sufficient to properly irrigate the land, by forcing the tributaries of the creek to be turned down sufficient water to supply the decreed rights being of earlier priority than the persons using the tributaries, but that it failed to do so. That on January 13, 1936, they notified plaintiff that they had elected to and did rescind the contract and to return to the plaintiff what they had received thereunder and executed and delivered to it a quitclaim deed to the land, which they said was accepted by the plaintiff, and offered to quit and surrender the premises upon the plaintiff paying to them the money they had paid upon the purchase price and for the improvements, and demanded repayment to them of the money they had so paid. They pray that the sum of $3,754.10 the amount they claim to have been paid out under the contract be paid to them by the plaintiff.

Under the issues thus stated, considerable testimony was taken which presents the principal questions (a) did the plaintiff knowingly and recklessly make false representations of material facts with intent to induce defendants to purchase the land and are they of such a nature that a person of ordinary prudence might and did rely upon them without knowledge of their falsity, and (b) if so, was the contract rescinded and acquiesced in by the plaintiff?

If either of these questions are answered in the affirmative, then the defendants would be entitled to recover the amounts paid on the principal and interest of the purchase price and amounts expended in improvements on the premises unless they have undertaken to make investigation of their own and the plaintiffs have done nothing to prevent their investigation from being as full as they choose to make it, or they must if they desire to rescind upon the ground of misrepresentation or fraud, upon discovery of the fraud or misrepresentation act promptly and announce their purpose and adhere to it and tender the profits received by them for the use thereof, if any, or account for the rental value of the land

during the period of occupation, if it had any, and place or offer to place the vendor in statu quo.

The nature of the representation claimed by the defendants to be false and made by the plaintiff relate to the kind of water rights appurtenant to the land and whether the water was ample and sufficient to properly irrigate it. The written contract of sale provides for the conveyance of 180 acres of land, "together with any and all the water rights decreed or otherwise appurtenant thereto." No specific amount of water is therein provided, but the defendants claim that at the time of the execution of the contract, plaintiff's agent represented to them that the land had a second water right of 35 inches of the water of Howell creek with date of priority of 1876, 50 inches of water with date of priority of 1880, and 130 inches of date of priority of 1892, and that the water rights appurtenant to the land was ample and sufficient to properly irrigate it, when in truth the 35 inches of 1876 is not a second right in the creek and the 50 inches of decreed water of 1880 did not exceed 30 inches and the 130 inches of date of 1892 were not ample and sufficient to properly irrigate the land.

It is evident from the evidence that the defendants could not and did not receive sufficient water to irrigate the land, nor was the 35 inches a second right of 1876, nor was there 50 inches of 1880 water, and that they soon after going upon the land made that fact known to the agent of the plaintiff, who insisted that there was sufficient water. They broke up approximately 80 acres and seeded it to crop and constructed a ditch with which to irrigate it and were unable to irrigate the land as the water master refused to turn water in the ditch as he said that there was no water for the land. As a result of that experience, the crop which they seeded, burned and died. They continued to complain to the plaintiff's agent that they were not receiving water to which they claimed that they were entitled to, and after some correspondence between them the plaintiff employed an attorney to procure the water, who did in April, 1933, institute an action in the state court and a decree thereafter entered, entitled John Renner v. Dewey et al., in which a decree was entered decreeing 35 inches of water of Howell creek a tributary of Marsh creek to the north half of the south half of section 4, township 12 south, range 25 E. B. M. with date of priority of March 31, 1876, 30 inches of the water of Howell creek with date of priority December 1, 1880, appurtenant to the northeast quarter of the southwest quarter and the north half of the southeast quarter of the southwest quarter of section 4, township 12 south, range 25 E. B. M. and 130 inches of the water of Howell creek with date of priority April 12, 1892. The defendant Renner, at the trial in May, 1934, was informed by counsel that from the abstract he had, the plaintiffs had not procured the water right for the land and it was then that the defendants discovered that the water right was not as represented to them, and the right of 1876 was not a second right in the creek.

It appears that in 1934, the defendants received no water and in 1935 they were unable to get sufficient water with which to irrigate the land. They again complained to the plaintiff, which was referred to its attorney who discovered that the decree in the Renner Case had not changed the situation. In October, 1935, the defendant Renner wrote to the plaintiff and stated that the water rights for the land had been misrepresented to them and that there was not sufficient water to irrigate the premises or raise crops thereon, and in January, 1936, they notified plaintiff that they had elected to and did rescind the contract and forwarded to it a quitclaim deed to the land, executed by them, demanding from it return of the money paid upon the purchase price together with interest, the amount paid on improvements placed on the land and all payments of taxes. The deed was accepted and retained by the plaintiff until the trial of the present case.

It further appears that the contract was signed by the defendants at their residence when the agent, Mr. Langloise, of the plaintiff, brought it there. There was then present the defendants and their two daughters, Mrs. Woodall, and Mrs. Anderson, and at that time Mr. Renner requested the agent to explain to his wife and family the water right for the land and he replied that the land had a decreed right of 35 inches of date 1876, 50 inches of date 1880, and 130 inches of date 1892; that the 1876 water was a second right in Howell creek and that there was plenty of water to irrigate all of the land and the right was as good a water right as the water right on the Burley

flat, the land where they were then living situated about ten miles from the land in controversy. It seems that before this conversation took place and the contract was executed Mr. Renner went to the office of Mr. Langloise, the agent of the plaintiff, for the purpose of renting some dry land on which he desired to pasture his cattle; after he arrived there, Mr. Langloise stated to him that he had a good cattle ranch. There is some dispute between them as to what they said when they met Phippen on the place, as to the water right. Phippen said that he told Renner that he was using 35 inches of 1876 water and was rotating with his neighbors. Newman testified that he did, prior to the time the contract was executed, tell Langloise that the only water there was for the place was 35 inches of 1876. Before and at the time the contract was signed, Mrs. Renner objected to and refused to sign it until she was assured by Langloise that there was sufficient water for the place and in the amounts and dates of use, from the creek, as testified to by the four persons present. The defendants were at all times before and at the time the contract was signed concerned about the quantity of water that was available for the irrigation of the land. Mrs. Renner, who is·a party to the contract, had never seen the land ·or talked to any one about it, or the water right, except with her husband and Langloise at the time the contract was signed. She says she was opposed to purchasing the land and was induced to sign the contract after Langloise had explained to her in the presence of her husband and two daughters that it was as good a water right as the ·water right on the Burley flat land, and was of the dates of use and amounts as related to them by Langloise at the time the contract was signed.

Not to exceed 70 or 80 acres of land has ever been irrigated, and the decree in the case of Renner v. Dewey shows that the 35 inches of 1876 is not appurtenant to all of the land, and that there is not, as already stated, to exceed 30 inches of water, with date of priority of December 1, 1880, and 130 inches of date 1892.

The representations made by Langloise that 35 inches of 1876 water was a second right of that year and that 50 inches of water of date of priority 1880 are not true when we consider the decree entered in the case of Renner v. Dewey et al., where eight prior rights are decreed in the tributaries of the creek and after these rights are supplied there is very little water left at times, available of the 35 inches of 1876, and the 30 inches of water appurtenant to the land, of Howell creek, which is a tributary of Marsh creek, after the water is turned down that creek and filled the prior rights. The Supreme Court of Idaho, has held that a "decree adjudicating rights and priorities to the use of the waters of a stream carries with it and adjudicates and decrees the rights and priorities to the waters of the tributaries to such stream above the respective places and points of diversion." Josslyn v. Daly, 15 Idaho, 137, 96 P. 568.

■ The representation that the land has a definite quantity of water and that it has a sufficient amount of water to irrigate it, which induced the defendants to purchase it, is not an expression of an opinion, but is a statement of a material and important fact and is such as was well calculated to induce the purchaser. Such representation is actionable, although the purchaser saw the property. Adkins v. Potter, 211 Cal. 512, 296 P. 285.

■ The modern and sound rule to be applied in a transaction of this kind where it is charged that the vendor knowingly and falsely made false representations of a material fact for the purpose of inducing another to enter into a contract for the purchase of land and water right, and the vendee in reliance upon such representations entered into the contract and thereby sustained loss by reason thereof, is that the vendee is entitled to relief from the fraud practised. Langloise, in representing the character and extent of the water right to the land, stated as a fact of his own knowledge, to the defendants in the presence of their two daughters, at the time the contract was signed, that the land had the kind of water right they say he represented, and that there was sufficient water going with it to properly irrigate it. When that was done, the defendants who did not know what the water right was and could not determine it from the records as they did not show the correct amount of water so represented prior to the entry of the decree in the case of Renner v. Dewey et al. Then the case comes under the principle announced by the Supreme Court of the state in the case of Detroit Fire In-

surance Company v. Sargent, 42 Idaho, 369, 246 P. 311, 312, where the court says: "This Court has held that ordinary prudence and diligence do not require a person to test the truth of representations made to him by another as of his own knowledge, and with the intention that they shall be acted upon, if the facts are peculiarly within the other party's knowledge or means of knowledge, though they are not exclusively so, and though the party to whom the representations are made may have an opportunity of ascertaining the truth for himself." See Sullivan v. Helbing, 66 Cal.App. 478, 226 P. 803; Teague v. Hall, 171 Cal. 668, 154 P. 851; Ruhl v. Mott, 120 Cal. 668, 53 P. 304; Aitken et al. v. Bjerkvig, 77 Or. 397, 150 P. .278; Cooper v. Schlesinger, 111 U.S. 148, 4 S.Ct. 360, 28 L.Ed. 382; James-Dickinson Farm Mortgage Co. et al. v. Harry, 273 U.S. 119, 47 S.Ct. 308, 71 L.Ed. 569. The rule has now become widely accepted in equity as well as at law that one may act upon positive representation of fact, notwithstanding the fact that the means of knowledge were open to him. It is fair to assume from a preponderance of the evidence that Langloise the agent of the plaintiff when in stating what the water right to the land was at the time the contract was signed made a positive representation of fact.

■■■ The next thought to be considered, Has plaintiff been placed in statu quo by the defendants? It appears that on January 13, 1936, and prior to the bringing of the present suit the defend-.ants executed and delivered to the plaintiff a quitclaim deed to the land described in the contract, and which was retained by it, until demand was made for it by the defendants at the trial and admitted in evidence. At the time of the delivery of the deed the defendants tendered possession of the premises upon the plaintiffs' repaying to them the amount that they had paid upon the purchase price, the taxes and premiums they claim to have paid on insurance and the value of the improvements placed thereon. It seems that at the time the tender was made no objection was made by the plaintiff to it, or demand for the payment of rent. Therefore the defendants' situation comes under section 28-112 of the Idaho Codes which provides: "All objections to the mode of an offer of performance, which the creditor has an opportunity to state at the time to the person making the offer, and which could be then obviated by him, are waived by the creditor if not then stated." This provision of the statute has been construed by the Supreme Court of the state, which we must adopt, in the case of Harding v. Home Investment & Savings Company, 49 Idaho, 64, 286 P. 920, 922, 297 P. 1101, where it is said: "Even if we were to accept the contention of the insurance company and the investment company that there was no agency relationship between them, the tender was good because it was in no way objected to. C.S. § 5672, provides that all objections to the mode of an offer of performance which the person making the offer might obviate are waived by the creditor if not then stated. Moody v. Crane, 34 Idaho [103] 117, 199 P. 652. Construing a statute identical to this, the Supreme Court of California has held that the 'mode' of performance includes unwarranted conditions in the tender which the person tendering, upon objections by the creditor, might remove, and that, if objections to such conditions are not raised by the creditor, they are deemed to be waived."

The Supreme Court of California, in construing a statute identical to the Idaho statute, held that unless objections as to the conditions in the tender are made, they are waived. Shermaster v. California Home Building Loan Co., 40 Cal.App. 661, 181 P. 409; Kofoed v. Gordon, 122 Cal. 314, 54 P. 1115. The purpose of the statute is to afford an opportunity to the plaintiff to state what objection it has to the tender so that it can be obviated or waived. The plaintiff did not object to the tender and accepted and retained the deed. Its failure to object to it and its acceptance and retention of the deed, waived under the statute, its right, if any it had, to the payment of improvements of the property or taxes or rent. The land being farming land, during the period that the defendants had been in possession and not having water to irrigate it with, it would not have any rental value. By the conduct of the plaintiff during the period when it was holding out to the defendants that it was going to get them the water right for the land, and which was not done, it is under all principles of equity now estopped to claim taxes or rent. It must be remembered that the plaintiff had a crop mortgage on the crops growing on the premises and such crops could be used by the de-

fendants with the consent of the plaintiff. No more of the small amount of crops raised were retained by the defendants than were necessary to feed their livestock, and which the plaintiff authorized to be done.

The last thought is, Have the defendants, upon discovery of the false representations, acted promptly and announced their purpose and adhered to it, and if so, was there any profit received by them from the operation of the land, and if not, did the land have a rental value during the period of their occupancy? As stated, the land had no rental value, nor were there any profits derived by the defendants in their attempt to farm it.

The statute of the state requires that action for fraud must be commenced within three years after the fraud has been discovered, section 5-218, ICA. The defendants filed their cross-complaint in the present action in May, 1936, which was less than three years after defendants discovered the fraud. They were at all times insisting that they were not getting the water to which they were entitled to, and that the water of the so-called second right of 1876 in Howell creek was going down the stream to fill prior rights. The correspondence and the conduct of the parties make it clear that the defendants had not discovered the fraud until the date of the trial of the case of Renner v. Dewey et al., in May, 1934, when they were informed by counsel that the quantity and dates of the water rights were not as they claimed to have been represented to them when the contract was signed. Therefore they were not guilty of laches under the evidence because they were constantly complaining to the agent of the plaintiff that they were not getting the water, and when that was done they were informed by the agent of the plaintiff that there was plenty of water and to go after the water master. The correspondence discloses that the plaintiff undertook to get them the water as it employed an attorney to interview the defendant Renner for the purpose of getting the water. This resulted in the institution of the action referred to in April, 1933, the trial of which was in May, 1934, and the decree entered June 23, 1934, which shows that a peaceable settlement of the matters were undertaken and failed, therefore the defendants are not barred by laches. The delay in rescinding was due to negotiations and statements at the instance of the plaintiff. Mathews v. Tannenbaum, 139 Cal. App. 500, 34 P.(2d) 233. While a defrauded party must not delay in repudiating the contract which has been induced by the fraud of another, nevertheless, under the evidence, the conduct of the plaintiff through its agent in assuring the defendants from time to time of securing water induced them to remain upon the premises and to endeavor to cultivate it, and lead them to believe, until they discovered it was not true, that the representations were true and they acted within the time provided by the statute and in such time as equity requires, McNiel v. Holmes, 77 Or. 165, 150 P. 255; Scott v. Delta Land & Water Co., 57 Cal.App. 320, 207 P. 389; Read v. Loftus, 82 Kan. 485, 108 P. 850, 31 L.R.A.(N.S.) 457. The defendants, under the circumstances thus related, having offered to surrender possession of the premises and demanded rescinding of the contract and the amounts paid out by them on the premises, entitles them to a decree on their cross-complaint, canceling the contract and for the amounts paid by them as on the principal and interest, and taxes, with interest at 6 per cent. per annum from the dates of the payments. These amounts appear to be $2,500, the amount paid on the principal of the purchase price, $1,543.92 interest. and $475.47 as taxes for the years 1927 and 1928, and costs.

The request of the defendants at the close of the taking of the evidence to amend their answer and cross-complaint to conform with the proof in respect to the amounts paid on the principal of the purchase price of the land and interest and taxes paid by them, is granted.

In view of the conclusion thus reached, the defendants are to surrender possession of the premises to the plaintiff.

Findings and decree will be prepared by counsel for the defendants and cross-complainants, a copy of which is to be submitted to counsel for the plaintiff within fifteen days and then submitted to the court for consideration.